**In re CHILD WORLD, INC., Debtor.**

**Bankruptcy No. 92 B 20887 (HS).**

United States Bankruptcy Court,
S.D. New York.

Nov. 5, 1993.

Weil, Gotshal & Manges, New York City, for debtor in possession.

Warshaw, Burstein, Cohen, Schlesinger & Kuh, New York City, for PolyGram Group Distribution, Inc.

Simon, Anisman, Doby & Wilson, P.C., Fort Worth, TX, for Camco Development, Inc.

McCarthy, Fingar, Donovan, Drazen & Smith, White Plains, NY, for Service Merchandise Co.

## DECISION ON DEBTOR'S OMNIBUS OBJECTION TO CLAIMS REGARDING THE DEBTOR'S ASSUMPTION, ASSIGNMENT OR REJECTION OF CERTAIN LEASES

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Child World, Inc. ("Child World" or the "debtor"), a Chapter 11 debtor as of May 6, 1992, has objected to various claims filed in connection with the assumption, assignment or rejection of numerous store leases. The debtor was a publicly owned company operating approximately 125 retail toy stores.

### THE POLYGRAM CLAIM

PolyGram Group Distribution, Inc. ("Poly-Gram") filed a claim for damages arising from the debtor's rejection of a sublease agreement with PolyGram. The debtor was a lessee under a prime lease with WRC Property, Inc. ("WRC") for premises located in Marion County, Indiana. On October 21, 1991, with the consent of WRC, the debtor entered into a sublease for a portion of the leased premises with PolyGram as subtenant. The monthly fixed rental of $30,000.00 was payable directly to WRC. The sublease provided that it could be terminated by either party on thirty days written notice.

On June 25, 1992, the debtor filed its motion to reject its prime lease with WRC, effective July 31, 1992 and to reject its sublease with PolyGram, effective July 15, 1992. The debtor chose July 15, 1992 as the termination date of the sublease with PolyGram because it wanted to sell certain racks on the premises before July 31, 1992, the termination date of its lease with WRC, so that it would not be liable for an additional month's rent for the period commencing August 1, 1992. The debtor had no further need to use the premises and did not derive any benefit from the prime lease or the sublease.

If the debtor had sought to terminate the prime lease and the sublease simultaneously on July 31, 1992, there would be no

question that PolyGram could not occupy the leased premises after the debtor's rejection of the prime lease because the sublease depended on the continuing efficacy of the prime lease; the rejection of the prime lease also results in the rejection of the sublease. *In re J.T. Moran Financial Corp.*, 124 B.R. 924, 925 (Bankr.S.D.N.Y.1991). This Court held that the termination of PolyGram's possessory interest two weeks earlier than the termination of the debtor's possessory interest under the prime lease did not abridge any of PolyGram's rights under 11 U.S.C. § 365(h) because, as a sublessee, PolyGram had no possessory interest to preserve following the debtor's rejection of the prime lease. *In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr.S.D.N.Y.1992). However, it was noted that the immediate termination of PolyGram's possessory interest could magnify PolyGram's damage claim. *Id.* at 90.

■ The debtor now contends that Poly-Gram has overmagnified its damage claim in two respects. First, PolyGram reasons that its claim for damages is entitled to administrative expense status because it lost a possessory interest of two weeks during the post-petition period when its sublease was rejected by the debtor. Second, PolyGram seeks allowance and administrative priority for all its lease rejection damages, including all expenses incurred in connection with moving to alternative premises, rather than that portion of damages which resulted from the shortened notice of termination. Had the debtor given PolyGram the thirty day notice under the sublease, there would have been no claim for damages arising from the exercise of an agreed upon termination provision. Accordingly, PolyGram is entitled to claim damages which were incurred solely as a result of having to vacate possession two weeks earlier than the agreed upon thirty day period provided in the sublease. Presumably these damages could reflect additional labor time incurred in having to move earlier, overtime labor costs for expediting the move and related expenses incurred as a result of the shortened notice. In this connection, the debtor objects to PolyGram's claim for the $15,000.00 PolyGram paid to WRC for the month of July, 1992, attributed to the period after PolyGram vacated the

subleased premises. This objection is not sustainable. The $15,000.00 which PolyGram paid directly to WRC under the sublease is a detriment which PolyGram incurred under the sublease without any corresponding benefit for two weeks occupation which the debtor lawfully cut off as a direct result of the shortened notice. This item is as justifiable as any additional overtime labor costs which PolyGram may also have incurred as a result of the shortened notice.

■ PolyGram's claim for administrative expense priority for its damages arising from the debtor's rejection of its sublease is unwarranted. A debtor's rejection of an unexpired lease is authorized, subject to court approval, in accordance with 11 U.S.C. § 365(a). The debtor's rejections of the prime lease and the PolyGram sublease were approved by this court on July 7, 1992, over PolyGram's objection. Pursuant to 11 U.S.C. §§ 365(g)(1) and 502(g) damages resulting from a debtor's rejection of an unexpired lease are treated as if the claim had arisen before the date of the filing of the petition for relief and are not entitled to administrative priority status under 11 U.S.C. § 503. Because the debtor was authorized by this Court to reject the prime lease with WRC and the sublease with PolyGram, the latter is entitled to a general unsecured claim for those damages which were incurred solely as a result of the shortened notice of termination.

### THE CAMCO CLAIM

The debtor has objected to the allowance of the claim by Camco Development, Inc. ("Camco") for damages resulting from the debtor's rejection of a lease agreement dated December 8, 1986 (the "Lease"), pursuant to an order of this Court dated May 6, 1992.

The debtor and Camco have agreed that the amount of the prepetition claim shall be $54,252.22. Camco also claims lease rejection damages for lost future rents resulting from the rejection of the Lease. The debtor, however, objects to the amount of the lease rejection claim on the ground that Camco has suffered no damages as a result of the rejection by the debtor because it has relet the

premises to another tenant at a substantially higher rental rate than was provided for in the original Lease.

Pursuant to the Lease, the debtor leased from Burk Collins Investments, predecessor in interest to Camco, certain commercial real estate located in North Richland Hills, Texas (the "Premises"), at a monthly rate of $23,-215.20 which was later rejected by the debtor pursuant to the order dated May 6, 1992.

By undated lease, effective April 12, 1993 (the "Replacement Lease"), Camco re-leased the Premises to Best Buy Company, Inc. ("Best Buy") for a term of 15 years. The monthly rental which Camco receives under the Replacement Lease is $37,751.25. Therefore, under the terms of the Replacement Lease Camco will receive from Best Buy approximately $2,040,691.46 more than it would have received from Child World over the term of the Lease.

Camco asserts its lease rejection claim based on the following facts: (i) Camco relet the Premises to Best Buy, which at the time of entering into the Replacement Lease was lessee of certain unrelated premises (the "Former Best Buy Premises"), pursuant to a lease (the "Ameritrust Lease") with Ameritrust, N.A., as Trustee of the Ameritrust Texas Real Estate Collective Investment Fund For Employee Benefit Trusts; (ii) Best Buy relocated from the Former Best Buy Premises to the Premises, thereby leaving the Former Best Buy Premises vacant; and (iii) pursuant to the Replacement Lease, Camco agreed to assume all obligations of Best Buy under the Ameritrust Lease with respect to the vacant Former Best Buy Premises.

■ The crucial issue is whether Camco may include as lease rejection damages the sum of $612,128.12, which represents the Best Buy obligations Camco agreed to assume under the Ameritrust Lease in order to induce Best Buy to relocate to the Premises which had been vacated by the debtor. Absent any specific provision in a lease, the general rule is that the measure of damages which a landlord may recover as a result of a tenant's rejection of the lease is the difference between the rental value of the remainder of the term and the rent reserved, both discounted to present worth. *City Bank Farmers Trust Co. v. Irving Trust Co.,* 299 U.S. 433, 443, 57 S.Ct. 292, 297, 81 L.Ed. 324 (1938); *D.H. Overmyer Co. v. Irving Trust Co.,* 60 B.R. 391, 393 (S.D.N.Y.1986). These damages are subject to the limitation that they may not exceed the greater of the rent reserved for one year or 15 percent of the remaining term, not to exceed three years, as expressed in 11 U.S.C. § 502(b)(6). The landlord can mitigate these damages by re-letting the premises, which will reduce the landlord's total actual lease termination damage. *In re Atlantic Container Corp.,* 133 B.R. 980, 990 (Bankr.N.D.Ill.1991).

In the instant case, Camco contends that it mitigated its damages by inducing Best Buy to relocate to the Premises at a higher rent, but that in order to achieve this result, Camco had to assume the obligations of Best Buy with respect to the premises which Best Buy vacated under the Ameritrust Lease. Therefore, apart from the obligations which Camco assumed under a lease unrelated to the rejected Lease in question, Camco suffered no loss in rental value as a result of the debtor's rejection of its lease with Camco. Indeed, Camco actually benefitted by reletting the Premises at a higher rental value. In such case, the landlord is not entitled to assert any claim for lost rent. *In re W.T. Grant Co.,* 36 B.R. 939, 942 (S.D.N.Y.1984).

In considering what actual expenses may be allowed to a landlord which were necessarily incurred in mitigation of damages resulting from a tenant's rejection of an unexpired lease, the courts have allowed expenses associated with securing new tenants. These expenses may involve remodeling costs. *Mauer v. Corondolet Realty Trust (In re Parkview Gem, Inc.)* 465 F.Supp. 629, 638 (W.D.Mo.1979). These expenses may also include utility charges, janitorial and repair costs and sign replacements. *In re Heck's, Inc.,* 123 B.R. 544, 546 (Bankr.S.D.W.Va. 1991).

■ However, Camco's assumption of the Ameritrust Lease obligations is not directly related to any damages sustained by Camco under the Lease rejected by the debtor. A landlord's assumption of obligations under an

unrelated lease in order to induce the tenant under that lease to relocate to the debtor's former premises is not one of the direct consequences of mitigating a landlord's damages under its rejected lease with the debtor. This assumption factor is too remote and unforeseeable as to be chargeable to the debtor. *See e.g., In re Thomson McKinnon Securities, Inc.,* 141 B.R. 559 (Bankr. S.D.N.Y.1992) *aff'd,* 151 B.R. 324 (S.D.N.Y. 1993), *aff'd without opinion,* (2d Cir. Oct. 13, 1993) (creditor's voluntary payment of a $2 million premium to induce a party to adhere to his stock sale contract with the creditor not a foreseeable element of damage arising out of the debtor/stockbroker's failure to register the creditor's earlier stock purchases in his own name).

Because Camco has sustained no loss in rental value as a result of the debtor's rejection of the Lease with Camco and has actually benefitted by reletting the Premises to Best Buy at a higher rental value, Camco's claim for future damages resulting from the debtor's lease rejection must be denied.

## THE SERVICE MERCHANDISE CLAIM

The facts underlying this claim dispute are uncontested. One of Child World's retail stores was operated on commercial real estate located in Columbus, Ohio, which had been rented from Service Merchandise Company, Inc. ("Service Merchandise") pursuant to a lease dated October 23, 1981 (the "Lease").

On September 8, 1993, this Court approved an order (the "Order") allowing for the assumption and assignment of the Lease by Child World to Musicland Group, Inc. under 11 U.S.C. §§ 365 and 363. The Order further provided that Child World's liability under the Lease would end at midnight on the day prior to the closing of the assignment, namely midnight, September 21, 1993. On April 16, 1993, Service Merchandise filed a claim for post-petition attorneys' fees and

expenses arising from Child World's purported breach of certain obligations under the Lease in the amount of $13,573.64.

On August 24, 1993, Child World objected to the amount of Service Merchandise's claim to the extent that such claim reflected attorneys' fees other than those "incurred in enforcing the rental, tax and common area maintenance provisions of the Lease incurred from the [p]etition [d]ate through September 21, 1992." Child World's Reply Brief at 7. Child World concedes that attorneys' fees are due and owing for enforcement of the Lease provisions during the underlying period from the petition date to September 21, 1992. *Id.* However, Child World disputes Service Merchandise's claim for fees and expenses incurred due to "Debtor's filing of a Chapter 11 petition [which constituted] a default [under the Lease]" and for the "costs of preparing for and attending the hearing on this [claim] objection." Consumer Merchandise's Response at 2–3.

■ Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties.[1] *In re Best Products Co.,* 148 B.R. 413, 414 (Bankr.S.D.N.Y.1992); *In re Hillsborough Holdings Corp.,* 126 B.R. 895 (Bankr. M.D.Fla.1991); *In re Westview 74th Street Drug Corp.,* 59 B.R. 747 (Bankr.S.D.N.Y. 1986). *But see In re Westworld Community Health Care, Inc.,* 95 B.R. 730 (Bankr. C.D.Cal.1989); *In re Foreign Crating, Inc.,* 55 B.R. 53 (Bankr.E.D.N.Y.1985). Paragraph 14.1 of the Lease provided for payment of legal fees as follows:

> Tenant shall protect [and] indemnify ... Landlord from ... costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) imposed upon or incurred by ... Landlord ... by reason of ... any failure on the part of the Ten-

---

**1.** *Section 365 provides in relevant part:*
(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee— ...

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default.... 11 U.S.C. § 365(b)(1)(B).

ant ... to perform or comply with any of the terms of this Lease....

Ex. 1 at 21. Therefore, if Child World breached any of the covenants contained in the Lease, Service Merchandise is entitled to attorneys' fees incurred in the enforcement of such covenants.

■ Service Merchandise claims that Child World breached two specific covenants of the Lease by; (i) failing to make timely payments due under the Lease; and by (ii) filing a Chapter 11 petition with this Court.[2] While the first ground for breach put forth by Service Merchandise is not directly admitted to by Child World, it does concede that any reasonable attorneys' fees incurred by Service Merchandise in enforcing the timely payment of rental, tax and common area maintenance charges under the Lease during the period from the petition date to September 21, 1992 are recoverable as an administrative expense. Child World's Reply Brief at 7. The second ground for breach, however, is disputed by Child World as being an *ipso facto* clause and thus void under section 365(e)(1) of the Bankruptcy Code.[3] Section 365(e)(1) provides:

> Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—
>
> .     .     .     .     .
>
> (B) the commencement of a case under this title....

11 U.S.C. § 365(e)(1).

It is clear that Service Merchandise's second ground for breach is based on the *ipso facto* clause found in paragraph 22.1 of the Lease, *see supra* note 2, and is unenforceable under the Bankruptcy Code. *Reloeb Co. v. LTV Corp. (In re Chateaugay Corp.),* 1993 WL 159969 at 4 (S.D.N.Y. May 10, 1993) ("Section 365 abrogates the power of ipso facto clauses. No default may occur pursuant to an ipso facto clause and no reliance may be placed upon an alleged default where the only cause for default is the debtor's commencement of a bankruptcy case."); *In re Texaco Inc.,* 73 B.R. 960, 965 (Bankr. S.D.N.Y.1987). Consequently, this Court finds no breach of the Lease due to Child World's filing a Chapter 11 petition. Service Merchandise may only recover attorneys' fees with respect to its collection of rents, maintenance and taxes under the Lease.

■ Service Merchandise, however, also contends that it should be awarded attorneys' fees and costs incurred while preparing for and attending the present claims hearing. While Service Merchandise, as discussed above, may recover reasonable attorneys's fees in connection with its collection efforts under the Lease, it is not entitled to attorneys' fees in connection with litigation of purely bankruptcy law issues. *In re Best Products Co.,* 148 B.R. 413, 414 (Bankr. S.D.N.Y.1992) ("Where litigated issues involve not basic contract enforcement questions, but issues peculiar to bankruptcy law, attorneys' fees will not be awarded absent bad faith or harassment by the losing party."); *Fobian v. Western Farm Credit Bank,* 951 F.2d 1149 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3031, 120 L.Ed.2d 902 (1992). The allowance of claims and objections thereto in bankruptcy proceedings are manifestly "issues peculiar to bankruptcy law" in contrast to litigation to enforce an agreement. *See e.g., Fobian,* 951

---

**2.** Article 22 of the Lease provides in relevant part:

> 22.1 Any of the following occurrences or acts shall constitute an "Event of Default" under this Lease: (a) if Tenant shall (i) fail to make any payment of Fixed Rent or additional rent herein required to be paid by Tenant and such failure shall continue for ten (10) days after notice thereof or ... (b) if Tenant shall file a petition in bankruptcy or for reorganiza-

tion ... pursuant to any present or future federal bankruptcy act or under any similar federal or state law....

**3.** "The so-called *'ipso facto'* clauses are those provisions in executory contracts and unexpired leases which result in a breach solely due to the financial condition or the bankruptcy filing of a party." *Bruder v. Peaches Records & Tapes, Inc.,* 51 B.R. 583, 587 n. 6 (Bankr. 9th Cir.1985).

F.2d at 1153 (" '[T]he question of the applicability of the bankruptcy laws to particular contracts is not a question of the enforceability of a contract but rather involves a unique, separate area of federal law.' ") (quoting *Collingwood Grain, Inc. v. Coast Trading Co.,* 744 F.2d 686, 693 (9th Cir.1984)). Consequently, Service Merchandise may not recover attorneys' fees incurred while preparing for and attending the present claims hearing.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B).

2. PolyGram has not sustained its claim for administrative priority status. However, PolyGram is entitled to an unsecured prepetition claim pursuant to 11 U.S.C. §§ 365(g)(1) and 502(g) for those damages which were incurred solely as a result of having to vacate the premises two weeks earlier than the agreed upon thirty day period in the rejected sublease with Child World. These damages include the $15,000.00 which PolyGram paid directly to WRC for the period after Poly-Gram vacated the subleased premises.

3. Child World's objection to the Camco claim for the obligations which Camco assumed under the Best Buy's lease with Ameritrust in order to induce Best Buy to relocate to the premises vacated by Child World, is sustained. Camco's assumption of the Ameritrust lease obligations is not directly related to any damages sustained by Camco under the lease rejected by Child World. Camco has sustained no loss in rental value as a result of Child World's rejection of its lease with Camco.

4. Child World's objection to the claim by Service Merchandise for attorneys' fees in connection with participation in the Chapter 11 case is sustained because the filing of a Chapter 11 petition is not the type of default authorized under 11 U.S.C. § 365(b)(1). The filing of a bankruptcy petition does not constitute a default with respect to an executory contract or an unexpired lease, as expressed in 11 U.S.C. § 365(e)(1). Service Merchandise may recover attorneys' fees only with respect to Child World's failure to perform or comply with any of the other terms of the lease, including collection efforts under the lease.